## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KIDS IN NEED OF DEFENSE,

1201 L Street, NW, Floor 2
Washington, DC 20005

        Plaintiff,

    v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

20 Massachusetts Avenue, NW
Washington, DC 20001

        Defendant.

Civil Action No. 20-944

## COMPLAINT

1.    Plaintiff Kids in Need of Defense ("KIND") brings this action against Defendant United States Citizenship and Immigration Services ("USCIS" or the "Agency") under the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552 *et seq*.  This action seeks production of information on USCIS's implementation of the July 16, 2019 interim final rule titled "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829, 33,843 (July 16, 2019), *codified at* 6 C.F.R. § 208.13(c)(4) (the "Rule"), information that KIND requested on September 12, 2019.  While the request is tailored and straightforward, and no FOIA exception applies, USCIS has produced nothing in the intervening six months, far in excess of statutory requirements.

## PARTIES

2.    Plaintiff KIND, a nonprofit corporation established under the laws of and headquartered in the District of Columbia, is the leading organization advocating for the rights of

unaccompanied migrant children nationwide.  Besides providing free legal representation to children in immigration matters, KIND educates the public about the conditions that force children to migrate alone, barriers that prevent them from accessing legal protection, and the dangers they face if returned to the countries they fled.  KIND has collaborated with federal agencies, Congress, and other policymakers to support policies that protect this vulnerable population.  Information from FOIA requests is utilized by KIND to further its mission.

3.      Defendant USCIS is responsible for adjudicating immigration benefits to noncitizens, including asylum benefits.  USCIS is an agency within the meaning of 5 U.S.C. § 552(f)(1).  It is headquartered in Washington, District of Columbia.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B) and (a)(6)(C)(i) and under 28 U.S.C. §§ 1331 and 1346.

5.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402.

## FACTUAL ALLEGATIONS

### Background on Asylum and Other Humanitarian Protections for Unaccompanied Children Facing Removal Proceedings

6.      The Immigration and Nationality Act ("INA," codified in principal part throughout Title 8, United States Code), implements the United States' treaty obligations, customary international law, and core American values by providing a broad right for foreign nationals who reach our country fleeing persecution to seek asylum here.  Hence nearly any foreign national "who arrives in the United States (whether or not at a designated port of arrival . . .), irrespective of such alien's status, may apply for asylum," subject to narrow eligibility exceptions.  8 U.S.C. § 1158(a)(1).

7.      Every year, thousands of children arrive in the United States without a parent or legal guardian with them, seeking safety through asylum or other forms of humanitarian protection.  Termed "unaccompanied alien children" ("UAC," *see* 6 U.S.C. § 279(g)(2)), these children are among the most vulnerable migrants who may apply for asylum.

8.      When unaccompanied children arrive at the U.S. southern border from El Salvador, Guatemala, and Honduras, many fleeing war zone-level violence,[1] those children necessarily transit through at least Mexico, and many through Guatemala and potentially other countries as well.  And a United Nations High Commissioner for Refugees ("UNHCR") study, which interviewed UACs from these three countries who entered the United States after October 2011, found the majority had potential needs for international protection, including asylum.[2] Plaintiff KIND's own research and client service in the region has made clear that children in transit from Central America through Guatemala and Mexico continue to be at risk from the very same persecutors—the same violent gangs and other perpetrators of gender-based or other violence—as in their countries of origin.  Moreover, neither Mexico nor Guatemala provides an adequate asylum system to protect children fleeing those risks.[3]

---

[1]      *See* U.S. Gov't Accountability Off., GAO-15-362, *Central America: Information on Migration of Unaccompanied Children from El Salvador, Guatemala, & Honduras* (2015); *see also* U.S. Gov't Accountability Off., GAO-15-521, *Unaccompanied Alien Children: Actions Needed to Ensure Children Receive Required Care in DHS Custody* (2015) (identifying deficiencies within the Department of Homeland Security's policies and procedures for screening UACs as required by the TVPRA).

[2]      *See* UNHCR, *Children on the Run* at 6, 8, https://www.unhcr.org/en-us/about-us/background/56fc266f4/children-on-the-run-full-report.html.

[3]      *See* KIND, *Guatemala: Completely Unsafe for Asylum Seekers (July 27, 2019)*, https://supportkind.org/press-releases/guatemala-completely-unsafe-for-asylum-seekers/; KIND & Centro de Derechos Humanos Fray Matías, *The Invisible Wall: Obstacles to Protection for Unaccompanied Migrant Children along Mexico's Southern Border (July 26, 2019)*, https://supportkind.org/resources/the-invisible-wall/.

9.      Congress, recognizing the vulnerability of UACs, created expanded protections for them in the asylum system through the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), which among other things requires that:

> Applications for asylum and other forms of relief from removal in which an unaccompanied alien child is the principal applicant shall be governed by regulations which take into account the specialized needs of unaccompanied alien children and which address both procedural and substantive aspects of handling unaccompanied alien children's cases.

Pub. L. No. 110-457, § 235(d)(7), 122 Stat. 5044, 5080-81.  As relevant here, the TVPRA provides both substantive and procedural protections for UACs seeking asylum.

10.     The TVPRA exempts UACs from two of the statutory bars to asylum eligibility that could otherwise block their claims to protection.  Whereas other migrants can be ineligible for asylum if they could be returned to certain "safe third countries" pursuant to an international agreement, 8 U.S.C. § 1158(a)(2)(A), or if they fail to file the asylum application within one year of arrival, § 1158(a)(2)(B), UACs are exempt from those bars, § 1158(a)(2)(E).  UACs are also insulated from the use of expedited removal processes by a mandate to afford them full proceedings in immigration court, § 1232(a)(5)(D); other protections include particular procedures for the voluntary return of children who are nationals of contiguous countries, § 1232(a)(4), (5).

11.     The TVPRA also provides a more appropriate forum for initial adjudication of UAC asylum claims where the child has been apprehended and placed in removal proceedings.  Although other applicants in that posture would have their asylum applications adjudicated in an immigration court as a defense to removal—before an immigration judge, subject to opposition and cross-examination by a government prosecutor—UACs are afforded a more child-appropriate, non-adversarial adjudication framework.  The TVPRA reassigns initial jurisdiction

over their cases to Defendant USCIS, which adjudicates UAC asylum claims through non-adversarial, administrative interviews by trained asylum officers.  § 1158(b)(3)(C).

12.     In addition to asylum, U.S. law provides related, but lesser, protections from removal for individuals who face persecution or torture if returned to their countries of origin, but who are found ineligible for asylum.  These protections are known as withholding of removal, 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture ("CAT"), *see* 8 C.F.R. § 208.16-18.  Defendant USCIS lacks jurisdiction over these alternative forms of relief, and thus adjudicates asylum eligibility only.  In exercising its TVPRA jurisdiction, if USCIS denies a child asylum, it refers the case back to an immigration court, where the child can renew the claim for asylum, as well as requesting withholding of removal and CAT relief.

**KIND's FOIA Request Seeks Information on a Matter of Significant Public Interest and Comports with the Act's Basic Purpose of Government Transparency and Accountability**

13.     On July 16, 2019, the Executive Office for Immigration Review and Defendant USCIS published the Rule, which creates a new regulatory bar that makes migrants who enter or attempt to enter the U.S. at the southern border generally ineligible for asylum if they have passed through a third country without seeking asylum there.  84 Fed. Reg. at 33830.

14.     Despite recognizing the relevant TVPRA protections that exempt UACs from the "safe third country" bar, the Rule "does not provide for a categorical exception for [UACs]." *Id.* at 33839 n.7.

15.     Applying the Rule's new asylum bar to UACs places a large number of them at risk of persecution, torture, or death.  The Rule neither "take[s] into account the specialized needs of [UACs]" nor "address[es] both procedural and substantive aspects of handling unaccompanied alien children's cases," and it is in plain conflict with the statutory exemption of

unaccompanied children from the "safe third country" bar. It is therefore incongruent with the

TVPRA, as multiple courts have held in attempting to enjoin the Rule.[4]

16.     The vast majority of asylum claims to which the Rule will apply arise in removal

cases of adult principal respondents in immigration court. In federal court challenges to the

legality of the Rule, the Government has submitted several policy documents describing how the

immigration courts will apply the Rule in affected cases.[5] Similar policies were not filed with

regard to how UAC asylum cases before Defendant USCIS will be processed.

17.     USCIS has not made public any guidance on proceeding with UAC asylum cases

subject to the Rule.

18.     Unaccompanied children subject to the Rule, and their attorneys, lack any clear

understanding of how the Rule will affect their filings or their practice. KIND's ability to

prepare filings and to prepare its clients for asylum interviews could be directly affected by the

opaque nature of these proceedings.

19.     For these reasons, KIND submitted the FOIA request at issue in this suit, seeking

pertinent information on USCIS's implementation of the Rule. **Exhibit A.** KIND, consistent

with its nonprofit mission, will use the information obtained to educate the children it serves and

the public on the Rule's implementation and to advocate as necessary for changes in law and

governmental practices. Such an intention falls squarely within "[t]he basic purpose of FOIA,"

which "is to ensure an informed citizenry, vital to the functioning of a democratic society,

---

[4]     *E. Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922, 956-57 (N.D. Cal. 2019)
(enjoining Rule and noting specific problems for unaccompanied children), *partial stay granted*,
934 F.3d 1026 (9th Cir. 2019); *injunction reinstated*, 391 F. Supp. 3d 974 (N.D. Cal. 2019);
*stayed*, 140 S. Ct. 3 (2019).

[5]     *E. Bay Sanctuary Covenant v. Barr*, No. 4:19-cv-4073 (N.D. Cal.), Dkt. #65-1; *Al Otro
Lado, Inc. v. Wolf*, No. 3:17-cv-2366 (S.D. Cal.), Dkt. #294-2.

needed to check against corruption and to hold the governor accountable to the governed."

*Judicial Watch, Inc. v. USDHS*, 895 F.3d 770, 780 (D.C. Cir. 2018) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

### USCIS Has Not Produced Any Records in Response to KIND's September 12, 2019 FOIA Request

20.     On September 12, 2019, KIND submitted a FOIA request with USCIS.

**Exhibit A.**  The request sought "policies, guidance, training materials, frequently asked (FAQ) lists, related documents, and transmission memos/cover emails pertaining to the [Rule]." *Id.* at 2.  The request included an application for expedited processing pursuant to 6 C.F.R. § 5.5(e)(1)(ii)-(iii) and the USCIS FOIA Manual. *Id.* at 2-3.

21.     On September 19, 2019, USCIS sent KIND a letter acknowledging receipt of the FOIA request, assigning it control number COW2019501266, and placing it in the simple track (Track 1).  **Exhibit B.**  The Agency also availed itself of the 5 U.S.C. § 552(a)(6)(B) ten-day extension. *Id.* at 1.

22.     KIND received no USCIS correspondence regarding the FOIA request between the acknowledgement letter and February 3, 2020.

23.     KIND emailed the Agency on February 3, 2020, asking for a status update, noting that USCIS's September 19 letter did not address KIND's application for expedited processing. **Exhibit C.**

24.     On February 18, 2020, USCIS responded via email.  **Exhibit D.**  USCIS moved the FOIA request to the complex track (Track 2) without explanation and rejected KIND's application for expedited processing. *Id.* at 1.

25.     On March 5, 2020, KIND sent USCIS a letter communicating an expectation that the Agency provide the requested records by March 25, 2020 (the estimated completion date

then listed on USCIS's electronic FOIA request system) and an intention to seek judicial intervention if the records were not produced by that date. **Exhibit E.**

26.    USCIS did not respond to KIND's March 5 letter.  As of the date of this filing, USCIS has not produced any documents responsive to the September 12, 2019 FOIA request.

### CLAIM FOR RELIEF

### Violation of FOIA for Improper Withholding of Agency Records (5 U.S.C. § 552(a)(4)(B))

27.    KIND incorporates by reference the above paragraphs as if fully set forth herein.

28.    KIND made a proper request for agency records under FOIA, and USCIS has improperly withheld the records in violation of the Act.

29.    FOIA required USCIS within 20 business days of receiving KIND's FOIA request to "determine . . . whether to comply with [the] request" and to "immediately notify the person making [the] request of [the] determination and the reasons therefore."  5 U.S.C. § 552(a)(6)(A).  The Act permits a ten-day extension for "unusual circumstances," § 552(a)(6)(B), which USCIS invoked, **Exhibit B** at 1.

30.    More than 30 business days have passed since USCIS received KIND's September 12, 2019 request.  The Agency has not (i) produced the requested records, (ii) indicated whether it will comply with KIND's FOIA request to any degree, or (iii) asserted any of the exemptions of 5 U.S.C. § 552(b).  Accordingly, KIND has exhausted its administrative remedies under § 552(a)(6)(C)(i).

31.    Upon information and belief, USCIS is not exercising due diligence in processing KIND's FOIA request and/or is being lax overall in meeting its obligations under the Act.  More than six months have passed since USCIS received the request, yet USCIS has not provided any portion of the requested records.  More than four months after the request, the Agency removed

it from the simple track (Track 1) without explanation and placed it in the complex track (Track 2).  USCIS responded to KIND's application for expedited processing after prodding.  Finally, the Agency has not provided any portion of the requested records by its own estimated deadline of March 25, 2020, nor has the Agency responded to KIND's intention to file suit.

32.     For the foregoing reasons, KIND is entitled to relief under 5 U.S.C. § 552(a)(4)(B) for USCIS's improper withholding of the requested records.  KIND respectfully submits that judicial intervention is appropriate as outlined in the prayer for relief.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, KIND prays that this Court:

A.     Order USCIS to process and produce, by a date certain, all records responsive to KIND's September 12, 2019 FOIA request;

B.     Award KIND litigation costs and reasonable attorneys' fees, as provided in 5 U.S.C. § 552(a)(4)(E); and

C.     Grant any other relief the Court deems just and proper.

Dated: April 9, 2020

By: /s/ Brian Burgess

Brian Burgess (D.C. Bar No. 1020915)
bburgess@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street, N.W.
Washington, DC 20036-1612
Phone: (202) 346-4000
Fax: (202) 346-4444

Elaine Herrmann Blais (*pro hac vice* pending)
eblais@goodwinlaw.com
Douglas J. Kline (*pro hac vice* pending)
dkline@goodwinlaw.com
Sarah J. Fischer (*pro hac vice* pending)
sfischer@goodwinlaw.com
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA  02210
Phone: (617) 570-1000
Fax: (617) 523-1231

Steven J. Bernstein (*pro hac vice* pending)
sbernstein@goodwinlaw.com
Cindy Chang (*pro hac vice* pending)
cindychang@goodwinlaw.com
Joel Broussard (*pro hac vice* pending)
jbroussard@goodwinlaw.com
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Phone: (212) 813-8800
Fax: (212) 355-3333

Wendy Wylegala (*pro hac vice* pending)
wwylegala@supportkind.org
**KIDS IN NEED OF DEFENSE**
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: (646) 970-2913

Attorneys for Plaintiff
Kids in Need of Defense